(No. 15636.—Reversed and remanded.)
WILLIAM THANOS, Appellee, *vs.* NICK THANOS, Appellant.

*Opinion filed October 28, 1924.*

1. TRUSTS—*constructive trust must be established by clear and convincing proof.* One claiming the benefit of a constructive trust must establish it by clear and convincing proof, as title to real estate is never permitted to be established by parol evidence unless the claim is supported by proof unequivocal and free from reasonable doubt, and evidence which is doubtful or capable of reasonable explanation upon theories other than the existence of the trust is not sufficient to support a decree declaring and enforcing the trust.

2. PARTNERSHIP—*when property purchased by one partner does not become partnership property.* Where partners are engaged in the restaurant business and have leased a building for the purpose the lease and the right to renew the same are partnership assets, but where one partner purchases the property and continues the business therein after retirement of the other partner the building does not become partnership property unless purchased with partnership funds, as the mere fact that the parties were engaged in a partnership enterprise does not make real estate purchased by one of them partnership property.

3. SAME—*when partnership is dissolved by retirement of member.* Where no definite time is fixed for the life of a partnership and no particular undertaking is specified which requires its continuance either party may declare the partnership terminated, and the act of one party in withdrawing from the partnership business is in fact and in law a dissolution.

4. SAME—*partnership is continued after withdrawal of member until affairs are settled.* Dissolution of a partnership by withdrawal of a member does not effect its immediate termination but the partnership continues until the winding up of its affairs is completed, and in equity the partner carrying on the business with the partnership property is liable, at the election of the other partner, to account for the profits thereof, subject to proper allowances.

5. SAME—*equity will consider all circumstances in winding up partnership business.* In winding up the affairs of a partnership a court of equity will take into consideration all the facts and circumstances surrounding the dissolution of the firm.

6. SAME—*when partnership property retained by partners after dissolution will be regarded as a division pro tanto.* Where one member of a firm of two partners engaged in the restaurant business withdraws from the firm and each partner retains a portion of the firm assets and neither demands a settlement of the partnership business and a division of assets for a period of three years after the dissolution of the firm, a court of equity will regard what each partner retains as a division *pro tanto* and require that each be charged with the sum so retained and account for the portion in his hands.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

MCINERNEY & POWER, and THOMAS B. LANTRY, for appellant.

DAVID K. TONE, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

In 1903 the parties to this litigation, who are brothers, engaged in the business of buying, selling and operating restaurants in the city of Chicago. During the existence of the partnership they owned and operated at different times ten restaurants. Appellant managed some of these and appellee the others. From time to time they had an accounting and each partner took his share of the profits. March 1, 1919, they had disposed of all but two of their restaurants. Of the two, the one at 203 East Thirty-first street was managed by appellee and the one at 3905 Cottage Grove avenue by appellant. March 27 they stated an account of their restaurant business covering all transactions up to March 1, 1919, and found that there was a profit of $31,487.98. Each partner took his share of the profits and

the partnership was continued. June 1 appellee sold the restaurant at 203 East Thirty-first street and retained the $7500 received from the sale. Thereafter he withdrew from the restaurant business and engaged in the bakery business and in the real estate business. Appellant continued to conduct the restaurant at 3905 Cottage Grove avenue. It is concerning this restaurant and the building in which it is conducted that this litigation arises.

August 14, 1922, William Thanos, appellee, filed his bill in the superior court of Cook county asking for a dissolution of the partnership existing between him and Nick Thanos, appellant, and for an accounting. After setting forth the formation and continuance of the partnership, the bill alleges that the restaurant at 3905 Cottage Grove avenue is now, and has at all times since its establishment been, operated by the partnership; that appellee is the owner of a one-half interest in said restaurant; that early in 1919 negotiations were opened for the purchase, for the benefit of the partnership, of the building in which the restaurant was being conducted; that the building was purchased for the sum of $14,750; that there was paid out of the partnership funds the sum of $6750 in cash in consideration of the purchase of the premises; that the balance of the purchase price was paid by assuming and agreeing to pay an incumbrance of $8000 then existing against the premises; that it was agreed between appellee and appellant that title to the premises should be taken by them jointly; that appellant secretly and without the knowledge and consent of appellee caused the deed to be taken in his name; that appellee protested as soon as he learned the facts, and appellant assured him that he would hold the title for the benefit of the partnership; that appellee was not satisfied with this arrangement and insisted that the title to the premises be taken in the names of both of them; that appellant was angered by the demands of appellee and became abusive; that appellant ordered appellee from the premises and told

him not to return; that appellant declared that he would operate the business at 3905 Cottage Grove avenue for the benefit of the partnership and would account to appellee from time to time for the profits; that appellant has continued to operate the restaurant and has collected and retained all the moneys derived from such operation; that appellant has failed and refused to render an account of the partnership business and to pay over to appellee any portion of the profits to which he is entitled.

Appellant filed his answer, admitting that the partnership was created in 1903 and that it continued to July 1, 1919. He avers that on said last mentioned date it was dissolved by the withdrawal therefrom of appellee. He denies that the restaurant at 3905 Cottage Grove avenue is now being conducted as a partnership business, and alleges that since the first of June, 1919, it has been·operated by him as his individual business. He denies that in 1919 he and appellee entered into negotiations for the purchase, for the benefit of the partnership, of the premises at 3905 Cottage Grove avenue, and avers that said premises were bought by him with his own money after appellee had refused to join him in the purchase of the property. He denies that any part of the purchase money was taken from the partnership funds, and that appellee has now, or ever had, any interest in said premises. He denies that appellee ever demanded that the premises be purchased in their joint names, and avers that he offered to convey to appellee a half interest in the premises if appellee would pay his share of the purchase price. He denies that any controversy arose between the partners by reason of this real estate transaction and denies that he ordered appellee to leave the premises. He denies that he agreed to conduct the restaurant as partnership property and to account for the profits, and denies that appellee has ever requested or demanded that he render an account of the partnership business. He denies that the partnership has existed since July 1, 1919, or

that appellee is entitled to any profits in the business since that date. He admits that appellee is entitled to his share of the profits of the business between March 1 and July 1, 1919. He says that appellee sold the partnership business at 203 East Thirty-first street for the sum of $7500 and that none of said sum has been paid over to appellant. He avers that appellee has invested said funds at a profit, and that, though repeatedly requested, he has continually failed and refused to account for appellant's share of the same. He avers that at the time of entering into the partnership agreement each party agreed to devote all his time, energy and experience toward the promotion of the partnership business, and each of the partners did devote all his time and skill to the business until July 1, 1919, when complainant voluntarily left the business and refused to longer carry out the purposes of the partnership. He avers that he has at all times been ready and willing to render an account of the portion of the partnership profits due appellee, but that appellee has at all times refused to account for the partnership property held by him.

There was a hearing before the chancellor and a decree entered finding that the partnership was still in existence; that the building at 3905 Cottage Grove avenue was a part of the partnership assets; that the restaurant being conducted at that location was a partnership business. The decree directed that appellant account to appellee for his share of the profits and referred the cause to a master to state the account. From that decree this appeal is prosecuted.

This suit is based upon the claim that the building at 3905 Cottage Grove avenue is partnership property and that appellant holds the same as trustee for the benefit of the partnership. There is no allegation in the bill nor evidence in the record which justifies the claim that an express trust was created by the act of the parties or that a resulting trust arose from the conduct of appellant. The theory of the bill is that appellant fraudulently and without the

knowledge or consent of appellee purchased in his individual name the building necessary to the successful operation of the partnership restaurant and paid for the same with partnership funds, and that equity should raise a constructive trust in favor of the partnership for the purpose of working out right and justice. The law is well settled that one claiming the benefit of a constructive trust must establish it by clear and convincing proof. If the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of the trust, it is not sufficient to support a decree declaring and enforcing the trust. This rule was established for the purpose of stabilizing real estate titles. The policy of the law is that all titles to real estate shall be evidenced by writing, and wherever the courts have permitted title to be established by parol evidence they have always been careful to examine every circumstance which might affect the probability of the alleged claim and have refused to grant relief where the claim was not supported by proof unequivocal and free from reasonable doubt. (*Winkelman* v. *Winkelman,* 307 Ill. 249; *Streeter* v. *Gamble,* 298 id. 332.) The evidence in this record is not of that character. The testimony of appellee in support of his bill is unsatisfactory and in many instances contradictory. His story is in conflict with the story told by appellant. While there is in the record testimony of three witnesses which in a measure corroborates the story of appellee, appellant's story is just as strongly corroborated by an equal number of witnesses. These disinterested witnesses do not throw much light on the real issue, because practically all the conversations between the parties concerning this property were in private. It will serve no useful purpose to recite in detail the testimony in this record. It is sufficient to say that appellee's testimony is in harmony with the allegations of his bill and appellant's testimony supports his answer. Briefly, appellee says that the partners agreed to buy the real estate in question,

and appellant, who was conducting the business for the partnership, fraudulently took title in his own name, while appellant says that he proposed to appellee that they buy the property as partners and that appellee refused to join him in the purchase and stated that he did not want to own any real estate on the South Side because of the increasing negro population. He says further, and he is corroborated in this statement by appellee and other witnesses, that he offered several times to transfer to appellee a half interest in the premises if he would pay his half of the purchase price, but that he refused to accept his offer.

While we recognize the general rule respecting the finding of a chancellor on conflicting evidence, we must hold in this case that the decree entered is not supported by clear and convincing proof and is against the manifest weight of the evidence. The evidence shows that this property was not bought with partnership funds, but that the purchase price was paid by appellant from private funds which had been set aside to him as his share of the profits from the partnership business. While the lease on this building and the right of the partnership to renew the same are partnership assets, this does not affect the right of appellant to secure and hold as his individual property the fee to the premises. The mere fact that appellant and appellee were partners in the restaurant business did not make real estate purchased by one of them partnership property. To make the building partnership property it must have been purchased with partnership funds for partnership purposes, or at least there must have been one of such elements present. *Blakeslee* v. *Blakeslee,* 265 Ill. 48; *Robinson Bank* v. *Miller,* 153 id. 244; *Alkire* v. *Kahle,* 123 id. 496.

Appellant testifies that prior to July 1, 1919, appellee withdrew from the partnership business of buying, selling and operating restaurants and engaged in other business; that he did not thereafter devote any time or skill to the business of the partnership and thereby violated the part-

nership agreement, and that by reason of appellee's withdrawal from the partnership and his violation of the partnership agreement the partnership was dissolved. Appellee testifies that he did not voluntarily withdraw from the partnership business of operating restaurants; that a controversy arose between the partners concerning the real estate transaction in question, and that appellant ordered appellee from the premises and told him that his services were no longer needed or desired; that this controversy occurred some time in the month of July, 1919, and that thereafter he engaged in the bakery business and in the real estate business. Whichever view is taken of the case, the part-, nership was dissolved some time between June 1 and August 1, 1919. We are not able from this record to definitely establish the date. Section 29 of the Uniform Partnership act provides that "the dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." Section 31 provides that this dissolution is caused by the express will of one of the partners when no definite term or particular undertaking is specified. Such was the situation in this case. There was no definite term fixed for the life of the partnership and no particular undertaking was specified which required the continuance of the partnership to complete the undertaking. Either the act of appellant in declaring the partnership terminated or the act of appellee in withdrawing from the partnership business was in fact and in law a dissolution of the same. (*Blake* v. *Sweeting,* 121 Ill. 67.) Such dissolution of the partnership was not, however, its termination. It continues until the winding up of partnership affairs is completed. In a court of equity a partner who after the dissolution of the partnership carries on the business with the partnership property is liable, at the election of the other partner, to account for the profits thereof, subject to proper allowances. (*Karrick* v. *Hanna-*

*man,* 168 U. S. 328, 18 Sup. Ct. 135.) In winding up a partnership, however, a court of equity will take into consideration all the facts and circumstances surrounding the dissolution of the partnership. In this case, when the partnership was dissolved about July 1, 1919, each partner had in his hands and retained a portion of the assets of the firm. Each having retained a portion of the firm assets, it would be inequitable to require appellant to account for profits and permit appellee to use a part of the firm capital in other business and to render no account for its use. Appellee has used in his business, since the dissolution, the firm money retained by him, and having used it in other business it will probably be impracticable to trace it and ascertain the profits or accumulations he has derived from its use. As each retained a portion of the firm assets and neither demanded a settlement of the business of the firm and a division of the assets for a period of three years after the dissolution of the partnership, principles of equity and justice require that the court regard what each retained as a division *pro tanto* and that each be charged with the sum so retained and account for the portion in his hands. (*Ligare* v. *Peacock,* 109 Ill. 94.) The evidence in the record is not sufficiently clear for us to specifically direct how the account shall be stated, but the rules for stating such accounts between partners are sufficiently well settled and recognized that it would seem specific directions are not required.

The decree is reversed and the cause is remanded to the superior court of Cook county for further proceedings in harmony with views herein expressed.

*Reversed and remanded.*