Ben Polikoff, Plaintiff-Appellant, v. Maurice S. Levy, et al., Defendants-Appellees.

Gen. No. 49,459.

First District, First Division.

January 25, 1965.

Rehearing denied March 1, 1965.

Tannenbaum & Polikoff, of Chicago, for appellant.

Rappaport, Clorfene & Rappaport, and Nat M. Kahn, all of Chicago (Nat M. Kahn and Hamilton Clorfene, of counsel), for appellees.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an action to recover the sum of $57,500 which the plaintiff gave to the defendants in connection with the purchase of real estate in Springfield, Illinois, and the building of a motel thereon. The amended complaint contains four counts. Counts I and II are based on the common law and Counts III and IV are based on the Illinois Securities Law of 1953 and on the Federal Securities Act of 1933 respectively. The defendants' motion to dismiss the amended complaint was denied as to Counts I and II, which are therefore still pending in the trial court; the motion was granted as to Counts III and IV, and since the trial court made an express finding that there was no just reason for delaying appeal and since plaintiff chose to stand on the counts as pleaded, he has appealed to this court.

The complaint shows that one of the defendants, Maurice S. Levy, wrote to the plaintiff on November 25, 1959, to inform him that a group of persons limited to friends and relatives were going into a new venture. He wrote "we have purchased a parcel of real estate in Springfield, Illinois, and are contemplating building a Super De Luxe Motel which the city is in dire need of. We are selling units of $10,000 each and we still have available for investment about 15 units or

$150,000." Enclosed with the letter was an architect's sketch of the proposed motel and a detailed statement of the capital requirements and the financing of the total required capital of $665,000 as well as a projected account of room rentals and cost of operations.

The plaintiff agreed to invest $50,000 and sent a check for half that amount to Levy on December 7, 1959, in return for which Levy sent the plaintiff what he (Levy) described as a "tentative receipt until the actual agreements and other documents are prepared and delivered to you." The document acknowledged receipt of the check "for the purpose of acquiring an interest in the contemplated motel [referred to in the caption as 'State House Motor Motel'] in Springfield, Illinois." Thereafter, at Levy's request, the plaintiff mailed to Levy the balance of the $25,-000 in return for which the plaintiff received a second "tentative receipt" acknowledging the sum as "the balance due for the purpose of acquiring a $50,-000 interest in the contemplated building" of the motel. Subsequently, and again at Levy's request, the plaintiff sent Levy a check for $7,500 which Levy's letter acknowledged as the plaintiff's proportionate share of the purchase price of a vacant lot which would be included in the motel project. This letter was also described as a "tentative trust receipt until the documents are available for signature."

About February 3, 1962, the defendants organized a corporation and proposed to the plaintiff that he enter into a contract whereby he would agree to accept stock in the corporation. The plaintiff declared the contract unacceptable and has refused to enter into it.

The plaintiff contends that the sale of "units" as evidenced by the November 25th letter and the three receipts constituted the sale of a security within the meaning of the Illinois Securities Law of 1953 and

of the Federal Securities Act of 1933 and that since the sale has not been registered with the appropriate state and federal agencies, plaintiff is entitled to avoid the sale and recover the payments he has made. The defendant contends that the plaintiff entered into a joint venture with the defendant and others to construct a motel and conduct a motel business and that such a sale is not subject to the state and federal securities laws.

Under both state and federal securities laws, the securities which fall within the scope of those acts must be registered with the appropriate agencies. (Ill Rev Stats 1963, c 121½, § 137.5 and 15 USCA § 77f.) The sale of unregistered securities is unlawful under both acts (Ill Rev Stats 1963, c 121½, § 137.12 and 15 USCA § 77e) and any person who purchases such securities may maintain an action under both acts to recover the consideration paid for such security (Ill Rev Stats 1963, c 121½, § 137.13 and 15 USCA § 771).

The sole question for us is whether the "units" of interest in the motel venture are securities as defined by the state and federal acts. The definition of "security" in both acts is identical in all respects relevant to the case at bar. The acts define "security" as:

> . . . any note, stock, . . . evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, . . . preorganization certificate or subscription, transferrable share, investment contract, . . . or, in general, any interest or instrument commonly known as a security, or any . . . certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

233

(Ill Rev Stats 1963, c 121½, § 137.2–1 and 15 USCA § 77b(1).)

 The courts have given the term "security" a broad construction and have held that the acts are paternalistic and hence are to be liberally construed to protect the public. In determining whether an instrument is a security within the meaning of the statute, the courts look to the substance of the transaction, to the relationship between the parties; these elements will control as against the form of the instrument. Form is disregarded for substance and emphasis is placed on economic reality. Sire Plan Portfolios, Inc. v. Carpentier, 8 Ill App2d 354, 132 NE2d 78; Meihsner v. Runyon, 23 Ill App2d 446, 163 NE2d 236; S.E.C. v. Howey Co., 328 US 293; S.E.C. v. Joiner Corp., 320 US 344; S.E.C. v. Universal Service Ass'n, 106 F2d 232.

 Both the Illinois and the federal courts have emphasized that a security within the meaning of the acts is a contract, transaction or scheme whereby one person invests his money in a common enterprise on the theory that he expects to receive profits *solely from the efforts of others*. Sire Plan Portfolios, Inc. v. Carpentier, 8 Ill App2d 354, 132 NE2d 78; S.E.C. v. Howey Co., 328 US 293; Hammer v. Sanders, 8 Ill 2d 414, 134 NE2d 509; S.E.C. v. Bailey, 41 F Supp 647. The reason for excluding from the scope of the securities laws those transactions in which the profits do not come solely from the efforts of others is clear. In such situations, the member of the enterprise pools his money with that of others in the group; he has an equal right of control over the project and the opportunity and right to know what is going on. Because of this, the protection of the full disclosure offered by registration is not needed as it is in cases involving a nonparticipating investor.

234

 We believe that neither the Illinois Blue Sky Act nor the Federal Securities Act apply in the instant case. Here we have a joint venture to buy and improve real estate by a group which included the plaintiff and the defendants. A joint venture is an association of two or more persons to carry out a simple enterprise for profit. There must be a community of interest in the purpose for which the relation is established. Ditis v. Ahlvin Const. Co., 408 Ill 416, 97 NE2d 244. There also must be an expectation of profit and the sharing thereof. Sappenfield v. Mead, 338 Ill App 236, 87 NE2d 220. These prerequisites for a joint venture have been met in the instant case. The complaint clearly shows a community of interest among the plaintiff and defendants to erect and operate a motel. The expectation of profit and the sharing thereof among the members of the group is equally clear. The fact that the formal agreements and documents described in the various receipts were never made or entered into by the plaintiff does not preclude a finding of a joint venture. Proof of the existence of this relationship may be made by evidence of the surrounding circumstances without evidence of any specific formal agreement. Ditis v. Ahlvin Const. Co., 408 Ill 416, 97 NE2d 244. Moreover, the fact that the plaintiff did not know the identity of or formally approve the admission of members to the venture after he joined it, does not preclude the existence of a joint venture.

 The relation of parties in a joint venture is so similar to that of partners that their rights and liabilities are generally tested by the same rules. Ditis v. Ahlvin Const. Co., 408 Ill 416, 97 NE2d 244. The general rule that new members of a partnership, and hence of a joint venture, must be known to and approved by the existing members of the group is subject to the agreement on which the relationship is

based. Ill Rev Stats 1963, c 106½, § 18(b). In the instant case, it was clear from the communications between Levy and the plaintiff that the members of the group were not specifically identified for the plaintiff and the size of the group was not fixed at the time the plaintiff joined. We take it that the plaintiff joined with this knowledge, which in effect became a part of the informal agreement on which the venture was based.

██ ██ In both partnerships and in joint ventures members of the group have equal rights of management and control of the enterprise. Lindley v. Murphy, 387 Ill 506, 56 NE2d 832. Hence when the plaintiff paid his money into the motel project as a member of a joint venture, he acquired equal rights of control of the activities of the venture. Therefore we believe that he did not pay his money with the expectation that future profits from the venture would come *solely from the efforts of others*. Hence the transactions involved here do not fall within the scope of the Illinois or federal securities acts.

The plaintiff cites two cases to show that "units" are "securities" within the provisions of the acts on which he relies. In Freeze v. Smith, 254 Mich 386, 236 NW 810, a syndicate was formed for the purpose of purchasing certain real estate for subdivision and sale. Forty-two "units" were sold and the court held that plaintiff did not acquire an undivided interest in land and the "units" he purchased were under that Blue Sky Act. By contrast, in the case at bar the plaintiff chose to associate himself with others in a joint venture to construct a single project and acquired a direct, undivided interest in the motel operation. In State v. Golden, 216 Minn 97, 12 NW2d 617, the court explicitly decides that what was involved there was not a joint venture, but a mere sale

of an interest in oil lands which was within the scope of that state's Blue Sky Act. We have examined all of the cases cited by the plaintiff and do not find that they are applicable under the pleadings in the case at bar or support the plaintiff's theory. We see no useful purpose in a discussion of those cases.

 It is quite clear that a joint venture to buy real estate and construct and operate a motel and to share in the profits is not within the provisions of either the Illinois Blue Sky Act or the Federal Securities Act. The judgment of the trial court in dismissing Counts III and IV is therefore affirmed.

Affirmed.

MURPHY and KLUCZYNSKI, JJ., concur.