The State House Inn Corporation, an Illinois Corporation, Plaintiff-Appellant, v. Ben Polikoff, et al., Defendants-Appellees.

Gen. No. 51,588.

First District, First Division.

August 4, 1967.

Rehearing denied September 14, 1967.

BURMAN, J., dissenting.

 

Rappaport, Clorfene & Rappaport, and Nat M. Kahn, of Chicago, for appellant.

Tannenbaum & Polikoff, of Chicago (Julius A. Polikoff, of counsel), and Schiff, Hardin, Waite, Dorschel & Britton, of Chicago (Alexander Polikoff, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a declaratory judgment action in which plaintiff, an Illinois corporation, seeks a declaratory decree that it is the owner of all of the assets of a joint venture known as The State House Inn. The trial court granted the motion of the principal defendant, Ben Polikoff, for a summary decree of dismissal, and plaintiff appeals. No evidence was heard, and the material facts are set forth in the pleadings and exhibits.

In 1959 and 1960, Polikoff gave $57,500 to Maurice Levy, Louis C. Rappaport, Harry Miller and Sidney Miller, the four originators of a motel project in Springfield, Illinois. Approximately 49 other persons also gave money for the project. In Polikoff v. Levy, 55 Ill App2d 229, 204 NE2d 807 (1965), this court found the undertaking to be a joint venture "to buy real estate and construct and operate a motel and to share in the profits," with a relationship so similar to that of partners that their rights and liabilities were to be tested by the same rules.

The instant complaint, filed September 30, 1963, shows that in June, 1961, "Articles of Limited Partnership" were signed by defendant Ben Polikoff. Later Polikoff "refused to execute the required Certificate of Limited

98

Partnership, and the same never became effective under the laws of Illinois."

The complaint alleges that on February 3, 1962, a charter was issued for the plaintiff corporation, "and plaintiff thereupon took over the operation of the 'State House Inn'; the assets of the enterprise were transferred to plaintiff by appropriate written instruments, and common stock issued by plaintiff to all the co-venturers in accordance with said resolution. Defendant Ben Polikoff and the said Alexander Polikoff have refused to accept the stock certificates tendered to them by plaintiff, and by his letter dated July 19, 1962, said defendant has disavowed his interest in the venture, and has determined all his transactions therein to be 'abrogated, annulled and at an end.'" A photostatic copy of the letter was made a part of the complaint.

The prayer of the complaint was for a declaratory decree "finding plaintiff to be solely entitled to the ownership of all of the assets of the enterprise aforesaid and the 'State House Inn,'" and that Polikoff be directed to join in necessary written directions to a trustee "to convey all its right, title and interest in and to the property of said Trust to plaintiff."

Polikoff filed a motion for summary decree on the ground that the property owned jointly by the members of the joint venture could not, as a matter of law, be validly transferred without the consent of all the joint venturers. The plaintiff also filed a motion for a summary decree. Polikoff's motion for a summary decree of dismissal was granted by the trial court, and judgment was entered against the plaintiff. The instant appeal followed.

The July 19, 1962, letter of Ben Polikoff, made a part of the complaint and addressed to the four originators, is as follows:

"DEMAND FOR REPAYMENT OF $57,500.00 AND NOTICE AND TENDER PURSUANT TO THE ILLINOIS SECURITIES LAW OF 1953, AS AMENDED.

"I hereby demand that you repay me the $57,500.00 I gave you as per three receipts bearing dates and for the amounts as follows: December 7, 1959, $25,000.00; February 2, 1960, $25,000.00; December 7, 1960, $7,500.00.

"Notice is given that the transactions in which I gave you said $57,500.00 are voidable, and abrogated, annulled and at an end.

"Said transactions related to a motel in Springfield, Illinois, which is referred to, in the first of said receipts, as 'State House Motor Motel' and, in the second and third receipts, as 'State House Motor Hotel.'

"I hereby tender to you the 'securities sold' (as defined in The Illinois Securities Law of 1953, as amended), including said receipts given me for the money I gave you; and I also tender and offer to give you an assignment, quit claim deed, disclaimer, and such other instruments sufficient to effect the relinquishment of any interest in said motel (or hotel) and in all appurtenances thereto, and in all furniture and equipment therein, and in the parking lot or so-called 'vacant lot,' which you may suppose I have by virtue of such transactions, or otherwise."

Subsequent to the writing of the letter, Polikoff brought suit, contending that the transaction came within the meaning of the Illinois Securities Law of 1953 and of the Federal Securities Act of 1933, and that since the sale had not been registered with the appropriate state and federal agencies, he was entitled to avoid the same and recover the payments he had made. In Polikoff v. Levy, 55 Ill App2d 229, 204 NE2d 807, this court held that

Polikoff had entered into a joint venture relationship and the securities law did not apply.

Both sides have asserted a number of contentions which do not require discussion, because of our concept of the principles to be applied to the undisputed facts appearing in the record.

■ Initially, we agree with plaintiff that Ben Polikoff was a member of the State House Inn joint venture, and that partnership legal principles govern joint ventures.

■ We further agree that since no "definite term" had been specified by the co-venturers, the July 19, 1962, letter of Polikoff must be viewed as his express will to withdraw from the joint venture. The execution and delivery of his letter was tantamount to a "ceasing to be associated" and caused a dissolution of the joint venture (Ill Rev Stats 1965, c 106½, §§ 29 and 31).

Plaintiff's basic contentions are: (1) "When Ben Polikoff demanded the return of his payments into the project and refused to join in the transfer of title to all the joint venture assets to the plaintiff corporation, he virtually resigned as a member of the joint venture. He made his choice to be a monetary creditor and thereby waived his right to object to the title of the plaintiff corporation to the joint venture assets, and the title of the corporation to the motel assets were consequently of no concern to him." (2) "When Ben Polikoff withdrew as a member of the joint venture, the other members continued the quasi-partnership. The previous existing quasi-partnership was deemed dissolved by his withdrawal, and a new partnership was formed in corporate form by the continuation of the project by the remaining members." (3) "Assuming, but without conceding, that the principal defendant, Ben Polikoff, had a cause of action because he was deprived of his interest in the joint venture, or damaged by the transfer of title to its assets to the plaintiff corporation without his con-

101

sent, the correct measure of damages is the value of his interest in the joint venture on either April 11, 1962, the date of the contract of transfer of title, or July 19, 1962, the date of his demand for the return of his payments into the enterprise."

Defendant Polikoff, not conceding that his offer and demand under the Illinois Securities Law had been a "virtual resignation," contends that if his actions may be viewed as tantamount to withdrawal as a member of the joint venture, "such a withdrawal would have been cause for the dissolution, but not the termination, of the joint venture, and Polikoff would have retained his joint venture membership with all of his rights until the joint venture was wound up. 'Under the Uniform Partnership Act the relationship of partners may be said to continue after dissolution so far as necessary to wind up the business. . . .' 1 Rowley on Partnership, p 583 (2nd ed, 1960). Since there has been no such windup, the Securities Law offer and demand—even viewing it as a withdrawal—would not have constituted a 'waiver' of Polikoff's rights as a joint venturer, including his right to object to the attempted transfer of the property to the plaintiff corporation. . . . Accordingly, even if a new joint venture had been formed without Polikoff, as plaintiff contends, the new joint venture (whether 'in corporate form' or not) would not own the property of the old."

As previously noted, we consider Polikoff's letter of July 19, 1962, to have been a withdrawal which caused the dissolution of the joint venture. Therefore, the next question to be determined is whether this relegated Polikoff to the "status of an ordinary creditor," or did the relationship of partners continue until the winding up of the affairs of the joint venture had been completed (§ 30).

On this point, absent an agreement to the contrary, defendant asserts that the formation of a new partnership following a change in membership of the old partner-

102

ship does not affect a transfer of title to the property, and cites 68 CJS, Partnership, pp 748–749, where it is said:

"[W]here a firm dissolves by a change in its membership and a new firm is formed, the property interests of the old firm belong to the old firm and do not become the property of the new firm without a clear agreement to that effect. . . ."

Defendant further asserts that "less than all the members of a joint venture do not have power to transfer all the property owned jointly by all the members to a corporation for stock in the corporation to be distributed by it to the members." Principally cited in support is Fortugno v. Hudson Manure Co., 51 NJ Super 482, 144 A2d 207 (1958), where partnership property was used to organize or acquire corporations without the consent of all the partners. There the court said (p 215):

"Less than all the partners in a partnership may not bind the partnership by an act or acts not performed for the purpose of carrying on the usual business of the partnership, unless authorized by the other partners. . . . This applies particularly to a situation where one or several partners, but not all, seek to incorporate a partnership and transfer the assets of the partnership to the new corporation. . . . Where such acts are not ratified by the other partners, the property remains that of the partnership and may be traced into the corporation . . . . It is, of course, basic that no one can be made a stockholder in a corporation without his knowledge and consent . . . ."

And at pp 218–219:

"We hold, however, that the partnership agreement does not bind us to a distribution of the cor-

103

porate stock itself. The agreement did not contemplate the transfer of partnership assets into corporations and a subsequent dissolution and distribution of the several corporate stocks, thereby transforming a full partner (here, Arthur) into a minority stockholder, denying him an effective withdrawal from the partnership enterprise upon liquidation, but instead compelling him to remain an unwilling minority stockholder in the several continuing corporations. . . . We therefore conclude that the assets of the partnership, including those of all the corporations, should be liquidated, and the proceeds distributed in cash."

Other authorities include Lindley on Partnership, (10 Ed), Bk III, chapter 2, § 3, p 394:

"Each partner is entitled to say to the others, 'I became a partner in a concern formed for a definite purpose, and upon terms which were agreed upon by all of us, and you have no right, without my consent, to engage me in any other concern, nor to hold me to any other terms, nor to get rid of me, if I decline to assent to a variation in the agreement by which you are bound to me and I to you.' "

Also, 8 Fletcher, Cyclopedia Corporations, 1966 Revised Volume, p 316:

"An association can act only through its representatives having authority to act for it in the matter of incorporation. Such authority can be derived only from the unanimous consent of the members or from a consent given by persons having the power to bind the rest. This rule applies particularly to a situation where one or several, but not all, seek to incorporate the partnership and transfer the assets of the partnership to the new corporation."

Plaintiff argues that the Fortugno case is not applicable here and states, "The principal distinction is that in Fortugno, the court's ruling was for an immediate wind-up and liquidation of all the five-family partnerships so that the irascible brother, who started the litigation, would receive a distribution in kind of the partnership assets. That is not the situation in the case at bar, where Section 42 of the Illinois Uniform Partnership Act determines that Polikoff, the sole dissenting member of the group, and who wrongfully caused the dissolution of the joint venture, should have the value of his partnership interest determined as of July 19, 1962, the date of the dissolution that he precipitated, and he will thereby become an ordinary creditor for this amount, together with the other incidental benefits under this statutory remedy."

Plaintiff further argues that Polikoff, as a joint venturer, was a fiduciary who wrongfully caused the dissolution and cites sections 38(2)(b), 41(3)(5), and 42 of the Partnership Act to show that Polikoff was "relegated to the status of an ordinary creditor."

▮ As to Polikoff's fiduciary status in the joint venture, we agree he had a fiduciary relation to the other members and was "bound to the utmost good faith in all dealings and transactions that affected the other[s] in the partnership business." (Bakalis v. Bressler, 1 Ill 2d 72, 78, 115 NE2d 323 (1953).) However, we are not persuaded that the complaint alleges any facts which show that his conduct in resigning or retiring as a member of the joint venture was wrongful, therefor the Partnership Act sections which deal with a dissolution wrongfully caused by a partner do not apply here. We conclude the record here does not show that section 42 should be applied.

In Englestein v. Mackie, 35 Ill App2d 276, 182 NE2d 351 (1962), this court said (p 288) :

105

> "Dissolution does not terminate the partnership and does not end completely the authority of the partners. The order of events is: (1) dissolution; (2) winding up; and (3) termination. Termination extinguishes their authority. It is the ultimate result of the winding up and occurs at the conclusion of the wind up."

■ We believe the foregoing principles announced in Englestein v. Mackie apply here. Polikoff caused a dissolution, which required a "winding up of the partnership affairs," and this windup has not been accomplished. Although the remaining members of the joint venture have determined that the motel project should be operated in corporate form, their assignment of the joint venture assets was not binding on Polikoff, and as said in the Fortugno case (p 216) :

> "Where such acts are not ratified by the other partners, the property remains that of a partnership and may be traced into the corporation."

Also, in Bonde v. Weber, 6 Ill2d 365, 128 NE2d 883 (1955), it is said (p 378) :

> ". . . a partner's right in specific partnership property is not assignable except in connection with the assignment of all the partners in the same property. (Ill Rev Stats 1953, c 106½, par 25(2)(a) and (b).)"

Because the matter in controversy is now being litigated in another lawsuit, we have tried to confine this opinion only to those facets of the controversy which we believe determinative of the issues here. For the reasons given, we conclude the motion of defendant for a sum-

mary decree was properly granted and, therefore, the judgment of the trial court is affirmed.

Affirmed.

ADESKO, J., concurs.

BURMAN, J., dissenting:
I agree with the majority of this court that by his letter of July 19, 1962, Polikoff elected to retire and withdraw from the joint venture he entered into with approximately forty-nine other persons. The actions of Polikoff clearly show that Polikoff, who is a quasi-partner of this joint venture, refused to execute a transfer of the legal title to the involved real estate solely because his money was not returned to him. He unsuccessfully attempted to force his co-venturers to repay to him the sum of $57,500 which he invested in the venture on the theory that the sale of units to him was in violation of the Securities Act because the sale of securities was not registered with the appropriate agencies.

Having failed in this attempt he now refuses to join in the transfer of the legal title to this real estate to the plaintiff corporation which was executed by forty-six of the forty-nine members of the joint venture. Having a fiduciary relation to the other joint venturers Polikoff is bound to the utmost good faith in their joint transactions. Instead he chose not to continue in the enterprise and retired from the business. The other joint venturers desire to continue the business. Under the circumstances I believe section 42 of the Illinois Uniform Partnership Act (Ill Rev Stats 1965, c 106½) applies. It provides, as follows:

"When any partner retires . . . and the business is continued under any of the conditions set forth

107

in Section 41 (1, 2, 3, 5, 6) or Section 38(2b), without any settlement of accounts as between him . . . and the person or partnership continuing the business . . . he . . . may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest. . . ."

Section 38(2b) referred to above provides:

"The partners who have not caused the dissolution wrongfully, if they all desire to continue the business . . . may possess the partnership property, provided they secure the payment by bond approved by the court, or pay to any partner who has caused the dissolution wrongfully, the value of his interest in the partnership at the dissolution. . . ."

Section 41(5) provides:

"When any partner wrongfully causes a dissolution and the remaining partners continue the business under the provisions of Section 38(2b), either alone or with others, and without liquidation of the partnership affairs, creditors of the dissolved partnership are also creditors of the person or partnership continuing the business."

There was no specific term stipulated for the continuation of the joint venture. Section 31(b) of the Illinois Uniform Partnership Act provides that it is terminable at the will of any one of its members. (Ill Rev Stats 1965, c 106½, § 31(1)(b)), when no definite term is specified.

The surviving joint venturers should be permitted to continue its business without liquidation of the partnership affairs. Under equitable principles and in conformity with section 42 the Chancellor should have ascertained

108

the date of dissolution and determined the value of Poli-koff's interest on that date and directed that Plaintiff pay to him an amount equal to the value of his interest. In my judgment the summary decree should be reversed and the case remanded for trial in accordance with the views expressed herein.