**SOUTHWEST WHEY, INC., a corporation, Plaintiff/Counter–Defendant,**

v.

**NUTRITION 101, INC., an Illinois corporation, Defendant/Counter–Plaintiff.**

No. 98–3217.

United States District Court, C.D. Illinois, Springfield Division.

Jan. 2, 2001.

D. Bradley Blodgett, James M. Lestikow, Randi L. Mann–Stadt, Springfield, IL, Mark C. Metzger, Lisle, IL, for plaintiff.

Thomas H. Wilson, David A. Rolf, Springfield, IL, James C. Brandenburg, St. Louis, MO, for defendant.

## *OPINION*

RICHARD MILLS, District Judge.

Southwest Whey vs. Nutrition 101, revisited. (*See Southwest Whey, Inc. v. Nutrition 101, Inc.*, 117 F.Supp.2d 770 (C.D.Ill.2000)).

This cause now comes before the Court on the motion for summary judgment on Count IV of its counterclaim filed by Nutrition 101, Inc.

### *I. BACKGROUND*

This case was originally filed on September 11, 1998. Defendant/Counter–Plaintiff Nutrition 101, Inc. ("Nutrition 101") filed its amended counterclaim against Plaintiff/Counter–Defendant Southwest Whey, Inc. ("Southwest Whey") on May 9, 2000. Count IV of the amended counterclaim alleges that Southwest Whey has failed to account for the benefits which it has received pursuant to a joint venture entered into by the parties. Nutrition 101 therefore asserts that it is entitled to an accounting for the revenue and profits received by Southwest Whey pursuant to the joint venture and its further pro-rata share of such revenues and profits after the joint venture was terminated. On August 4, 2000, Nutrition 101 filed a motion for summary judgment with respect to Count IV of its amended counterclaim. Nutrition 101 has submitted the report of its expert, Jay Buck ("Buck"), in support of its motion for summary judgment on Count IV of its counterclaim.

Nutrition 101 entered into a joint venture with Southwest Whey on May 30, 1989. Southwest Whey agreed to obtain whey from dairies and Nutrition 101 agreed to market whey to hog farmers in the region east of the Mississippi River and in other areas by mutual agreement. Southwest Whey dissolved the joint venture on September 16, 1993. There was no winding up or accounting following the dissolution.

On March 30, 2000, a judgment was entered in the Circuit Court of St. Louis County, Missouri, sustaining a Motion to Enforce Settlement concerning the amount of $450,000.00 to be paid by Raskas Foods, Inc., pursuant to a contract entered into by Southwest Whey on behalf of the joint venture between the parties. This is at issue in the instant motion. The Raskas litigation has been terminated as to all substantive issues. However, the settlement agreement has not yet been reduced to writing. Moreover, no money has been paid by or on behalf of Raskas Foods, Inc., pursuant to the settlement. Other assets and benefits of the joint venture include various contracts and agreements with dairies for the supply of whey.

Nutrition 101 therefore moves for summary judgement against Southwest Whey as to Count IV of its amended counterclaim for its pro-rata share of revenue and profits received by Southwest Whey after the termination of the joint venture and the value of the various contracts and agreements with dairies, prejudgment interest, costs, and any other relief that the Court deems proper.

Nutrition 101 first asserts that the conduct of Southwest Whey of September 16, 1993, constituted a dissolution of the joint venture pursuant to Illinois law. See 805 ILCS 205/29 (1998). The proper way to end a joint venture is the following: 1) Dissolution; 2) Winding up; and 3) Termination. *See State House Inn Corporation v. Polikoff,* 86 Ill.App.2d 97, 230 N.E.2d 283 (1st Dist.1967). Moreover, when some of the business continues, the

parties are obliged to provide an accounting of the financial transactions of the business and to account to the remaining members of the joint venture after dissolution. *See Thanos v. Thanos,* 313 Ill. 499, 145 N.E. 250 (1924).

Nutrition 101 alleges that there has been no winding up in the instant case. Moreover, Southwest Whey has failed to account to Nutrition 101 for the benefits it has received. Nutrition 101 refers specifically to profits from joint venture assets and settlement proceeds of $450,000.00 it alleges were paid to Southwest Whey by Raskas Foods, Inc., pursuant to a judgment entered in the circuit court of St. Louis County, Missouri. Nutrition 101 seeks an accounting on this basis.

Nutrition 101 relies on Buck's report to support its motion for summary judgment. Buck is a certified public accountant accredited in business valuation. He has attempted to determine the final accounting and division of assets for the interests owned by each party in the joint venture. Buck has valued the margins earned by Southwest Whey and Nutrition 101 since the joint venture was terminated. He has done this by valuing the margins from farm customers and dairies that the joint venture served from October 1993 through September 2000. Buck then added each company's margin and divided the figure in half pursuant to the joint venture. After taking into account the amount actually received by Nutrition 101 from the plants and customers of the joint venture, Buck concluded that Nutrition 101 is owed $593,523.00 by Southwest Whey.

Nutrition 101 also relies on Buck's report regarding the division of the joint venture assets. Each company would receive one half of the assets in the final accounting for the joint venture. Because there was no earlier division, Buck attempted to equitably divide the assets as they currently exist for each company. He concluded that the present value of Nutrition 101's shortfall in expected margins is $324,277.00

Finally, Nutrition 101 relies on Buck's report with regard to settlement proceeds allegedly received by Southwest Whey. This involved a lawsuit which arose out of a contract entered into by Southwest Whey on behalf of the joint venture. The cause of action was not resolved at the time of dissolution. Nutrition 101 alleges that Southwest Whey received a settlement in the amount of $450,000.00 pursuant to the dispute. Buck's report indicates that each company should receive one half of the settlement proceeds. Nutrition 101 is therefore entitled to $225,000.00.

Pursuant to Buck's report, Nutrition 101 asks this Court to enter judgment in its favor on Count IV in the amount of $1,115,987.00.

Southwest Whey responds by noting that it does not dispute the need for an accounting. However, because there are genuine issues of material fact regarding the outcome of an accounting, an entry of summary judgment would not be proper.

Southwest Whey begins by asserting that its expert indicates that an accounting will not result in it having to pay Nutrition 101. Rather, the funds will flow in its direction. Southwest Whey argues that because of the numerous disagreements between the parties as to the status of the accounts, summary judgment would be improper. Southwest Whey contends that at the time the joint venture was terminated, there remained differences of opinion regarding disputed expenses. Southwest Whey indicated that Nutrition 101 had withheld margins earned by Southwest Whey totaling $102,492.43, whereas Nutrition 101 contended that this amount was "paid by offset." Moreover, Southwest Whey alleges that the approach of Nutrition 101's expert is inconsistent in his treatment of accounts receivable and that his analysis failed to use generally accepted accounting principles.

Southwest Whey refers to the report of its expert, Michael Lewis ("Lewis"), in attempting to show that material facts exist as to what an accounting would yield.

Specifically, Lewis refers to revenues that the joint venture earned between January of 1993 through September of 1993. Southwest Whey alleges that it never received any of these revenues. Southwest Whey contends that Nutrition 101's refusal to account for these funds is based on its assertion that Southwest Whey owed it money at the time. Hence, Nutrition 101 deducted this amount from what it alleges it was owed by Southwest Whey at the time. Southwest Whey alleges that this is an improper technique to account for the funds, amounting to "outright theft" of their earned proceeds.

Southwest Whey next contends that there are disputes that exist regarding the accounting practices employed throughout the joint venture which create issues of fact as to the basis of Nutrition 101's expert opinion. Southwest Whey alleges that the accounting principles employed by Nutrition 101 would not be considered generally accepted principles. Southwest Whey asserts that because there are disputes as to the state of the books at the time of the termination of the joint venture on September 16, 1993, there are genuine issues of material fact as to the amount an accounting would generate. Therefore, Southwest Whey questions Buck's means of arriving at a bottom dollar figure. Specifically, it alleges that Buck's report assumes that the joint venture has been operated in a separate fashion since September 1993. It maintains that his method of attempting to provide an accounting consisted of adding and subtracting the profits and losses experienced by both parties since the termination. Southwest Whey therefore contends that summary judgment would be improper because there are genuine issues of material fact as to the amount such an accounting would yield and to which party the funds would flow.

Southwest Whey then addresses Nutrition 101's claim to a portion of the Raskas settlement proceeds. Southwest Whey first notes that the settlement monies have not yet been paid. Moreover, it contends that Nutrition 101's constant efforts to intervene in the litigation have stalled resolution of the matter.. Southwest Whey concedes that Nutrition 101's interest in the settlement proceeds is at issue. However, it maintains that this is another reason why summary judgment would be improper. This further demonstrates that there are issues of material fact as to what an accounting would yield. Therefore, Southwest Whey contends that Nutrition 101's motion for summary judgment should be denied.

Nutrition 101 asserts that the report of its expert is undisputed. Specifically, it contends that any facts used by Southwest Whey in attempting to defeat the motion for summary judgement concern expenses and remittances during the term of the joint venture. Buck's report on the winding up relied on the margins of the parties since the termination of the joint venture. Hence, the report is not affected by any disputed expenses or accounting methods during the life of the joint venture. Moreover, Nutrition 101 contends that the Buck report equitably divides the assets of the joint venture, farm customers and dairies as they currently exist and does not presume perpetuation of the joint venture. Nutrition 101 also maintains that it has not interfered in any way with the Raskas litigation.

Nutrition 101 alleges that Southwest Whey cannot defeat its motion for summary judgment by saying that it intends to supplement its expert's report when it has not yet done so. Nutrition 101 contends that this violates Federal Rule of Civil Procedure 26(a)(2)(c), which provides that any such report must come forth within thirty days of the other party's disclosures. Moreover, Southwest Whey's intention to file a motion in limine regarding this evidence does not satisfy the requirements of Rule 26. Nutrition 101 alleges that the time has passed for Southwest Whey to take issue with Buck's report. Nutrition 101 contends that Southwest Whey's failure to do this means that there is no issue of material fact regarding Buck's report.

Nutrition 101 further asserts that Southwest Whey raises issues of fact which relate only to the accounting prior to the dissolution of the joint venture. It contends that those issues have nothing to do with Count IV of the counterclaim which is at issue in this motion. Rather, the Buck report and this motion involve issues regarding the winding up. Nutrition 101 argues that Southwest Whey failed to address that portion of Buck's report that deals with an accounting since dissolution. This includes the proceeds each party received from the joint venture assets between 1993–2000 totaling $593,523.00. It also includes a division of the joint venture assets as of 2000 totaling $324,277.00. Therefore, Nutrition 101 contends that Southwest Whey's response which addresses an accounting during the joint venture does not create an issue of fact.

Nutrition 101 next alleges that the third item that is the basis of the summary judgment motion, the Raskas proceeds, is attacked only as to deduction of attorney's fees and expenses. Because Nutrition 101 also incurred such fees and expenses, it contends that this has no bearing on the motion. Therefore, it maintains that it is entitled to one half of the settlement proceeds. This would total $225,000.00.

Thus, Nutrition 101 contends that it is entitled to summary judgment on Count IV of its counterclaim in the amount of $1,142,800.00.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In conducting this inquiry, the evidence of the non-movant is to be believed, and "all justifiable inferences drawn in his favor."

See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden of producing documentary evidence to show the absence of a genuine issue of material fact. A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. See Howland v. Kilquist, 833 F.2d 639 (7th Cir.1987).

## III. ANALYSIS

The basis of Nutrition 101's summary judgment motion is that part of Buck's report was not answered by Southwest Whey within the time allotted. Thus, while there may be issues regarding the outcome of an accounting prior to dissolution, there are no issues of material fact as to Buck's report on what a winding up of the joint venture would yield.

Federal Rule of Civil Procedure 26 governs the disclosure of expert testimony:

These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B),

within 30 days after the disclosure made by the other party.

Fed.R.Civ.P. 26(a)(2)(C)

The Court notes that Southwest Whey's expert Lewis submitted his report on May 1, 2000. This was within the time allowed by the Court pursuant to Rule 26. However, as Nutrition 101 indicates, that report makes no reference to an accounting since the dissolution on September 13, 1993. The report submitted by Buck on behalf of Nutrition 101 contained an accounting during the term of the joint venture and an accounting regarding the winding up of the joint venture. This report was disclosed on July 17, 2000, which was within the time allowed by the Court. It is this report which supports the instant motion.

The deadline for Southwest Whey's expert disclosure was originally May 1, 2000. Lewis' report which was submitted on that date was silent as to the result of an accounting since dissolution. However, pursuant to Rule 26, Southwest Whey would have thirty (30) days following the disclosure of Nutrition 101's report to rebut or contradict any of Buck's conclusions regarding such an accounting. Thus, because Nutrition 101's report was disclosed on July 17, 2000, Southwest Whey had until August 17 to respond to any of Buck's conclusions on an accounting regarding the winding up of the joint venture. Nonetheless, Southwest Whey failed to respond in any way to this portion of Buck's report within the time provided. It was not until October 20, 2000, that Lewis' supplemental report was provided to Nutrition 101.

Federal Rule of Civil Procedure 37 governs a party's failure to disclose information required by Rule 26:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. . In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

Fed.R.Civ.P. 37(c)(1)

■ The sanction of exclusion is automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless. *See Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996). Southwest Whey has not attempted to justify the delay. Indeed, as Nutrition 101 notes in a supplement to its motion in limine to bar the additional opinions of Lewis, Southwest Whey cannot offer any justification. This is because Lewis had access to all of the materials that he relied on in preparing his supplemental report in advance of the August 17 deadline to respond to Buck's report. Hence, it is clear that there is no justification for Southwest Whey's late disclosure.

■ The question then becomes whether Southwest Whey's late disclosure was harmless. Southwest Whey has indicated in its response to Nutrition 101's motion in limine that Lewis will address only issues that have been raised by Nutrition 101 or to otherwise clarify his opinions. No new elements or controversies will be injected into the case. Moreover, Southwest Whey notes that the testimony of Lewis regarding the value of the joint venture, the winding up of the joint venture, the manner in which Buck arrived at his conclusions, and the value of any contracts are essential to its ability to present its own case and to properly defend itself.

The Court notes that granting Nutrition 101's motion would result in a judgment in its favor in excess of one million dollars, a significant portion of the case. The sanction imposed by the Court should be "proportionate to the circumstances surrounding a party's failure to comply with discovery rules." *See Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir.1996). The sanction "must be one that a reasonable jurist, apprised of

all the circumstances, would have chosen as proportionate to the infraction." *See Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir.1998). The Court concludes that granting Nutrition 101's summary judgment motion on the petition for an accounting would be a disproportionate sanction for Southwest Whey's failure to comply with the discovery rules.

While it is true that Southwest Whey's failure to comply with the discovery rules is inexcusable, there is no indication that this failure harmed Nutrition 101 in any way. Like Southwest Whey, Nutrition 101 has been aware for some time that a post-dissolution accounting would be at issue. Accordingly, Buck's report included his conclusions as to the result of such an accounting. The Court can therefore find no harm that resulted to Nutrition 101 from Southwest Whey's late disclosure of Lewis' supplemental report.

The Seventh Circuit recently addressed the sanction of exclusion in the context of a summary judgment motion in *Sherrod v. Lingle*, 223 F.3d 605 (7th Cir.2000). In *Sherrod*, the exclusion of the expert testimony would necessarily result in the dismissal of the case. In such an instance, Rule 37 precludes the Court from imposing such a sanction unless it determines that a party's failure to comply with Rule 26(a) was both unjustified and harmful to the opposing party. *See Sherrod*, 223 F.3d at 612 (citing Fed.R.Civ.P. 37(c)(1)). Here, the sanction of excluding the relevant portion of Lewis' report would be similar to dismissal in that the Court would be granting judgment in a substantial amount on a portion of the counterclaim. While it is true that Southwest Whey's failure to comply with the discovery rules is unjustified, the Court cannot find that the failure was harmful to Nutrition 101. Thus, the Court cannot grant judgment to Nutrition 101 in an amount in excess of one million dollars on its petition for an accounting.

*Ergo*, Nutrition 101's Motion for Summary Judgment on Count IV of its Counterclaim (d/e 83) is DENIED. The Court notes that it is unaware of any harm that will result to Nutrition 101 in allowing Michael Lewis to supplement his opinions. Should Nutrition 101 determine that there is harm, it may seek leave of Court to take a follow up deposition of Lewis to clarify its understanding of his opinions.