Kenneth Cobb, et al., Plaintiffs-Appellants, v. Uplands Hardware Corp., Nelson Kuntz, and Jefferson Trust & Savings Bank of Peoria, Defendants-Appellees.

Gen. No. 65–36.

Third District.

March 17, 1966.

McConnell, Kennedy, McConnell & Morris, and Thomas A. Loose, all of Peoria, for appellants.

Davis, Morgan & Witherell, of Peoria, for appellees.

MR. JUSTICE MORAN delivered the opinion of the court.

The sole question presented by this appeal is whether the defendant-appellee bank is, under the particular facts of this case, an underwriter as defined by the Illinois Securities Law of 1953.

Plaintiffs-appellants filed suit against Uplands Hardware Corp., Nelson Kuntz, president of the corporation, and Jefferson Trust and Savings Bank of Peoria to recover the purchase price of certain corporate securities allegedly sold to them in violation of the Illinois Securities Law. A bench trial was had resulting in a judgment against the corporation and Kuntz; however, the court found in favor of the defendant bank against plaintiffs. Plaintiffs have appealed from that portion of the judgment in favor of the bank.

From the evidence it is disclosed that in 1959 the male plaintiffs were part-time employees of the defendant corporation. Early that year defendant Kuntz, the corporation president, offered to sell each of them, and to other employees, twenty of his shares of the common stock of the corporation for Five Thousand ($5,000) Dollars each or Two Hundred Fifty ($250) Dollars per share. At this time the stock had a book value of Eighty ($80) Dollars per share. Kuntz advised them that he had ar-

ranged financing for them and that a portion of their wages would be deducted to pay for the cost of the shares. After accepting the proposal, the plaintiffs were presented with personal financial statement forms. The forms were filled in and returned to Kuntz who gave each of them a promissory note payable to defendant bank in the amount of Five Thousand Five Hundred ($5,500) Dollars. The plaintiffs were told to sign the notes and have their wives sign them.

After the notes were signed and returned each of the plaintiffs was presented with a cashier's check in the amount of Five Thousand ($5,000) Dollars, payable to his order, a stock certificate for twenty shares in the corporation and a stock repurchase agreement. Each plaintiff endorsed his check and stock certificate in blank and executed the repurchase agreement. The checks were deposited in the corporation account and the stock certificates were delivered to defendant bank as collateral security for the loans. In addition the notes were guaranteed by the corporation and Kuntz and credit life insurance on each borrower was obtained by the bank.

Thereafter, wage deductions were made until plaintiffs left their employment with the corporation in 1961. Then plaintiffs made monthly payments on the notes directly to the bank and executed renewal notes.

In 1962, after the corporation suffered financial reverses, plaintiffs notified defendants of their intention to declare the sale of the securities void in accordance with the Illinois Securities Law and they filed this action for the return of the purchase price of the shares and for interest and attorney's fees.

It would appear that at the time of the transaction the corporation was indebted to the bank in the amount of Ten Thousand ($10,000) Dollars against an established line of credit of Fifteen Thousand ($15,000) Dollars. It would also appear that an officer of the bank was fully

informed about the transaction and the proposed use of the funds to be borrowed by plaintiffs.

The original transaction was voidable under the Illinois Securities Law of 1953 for the reasons that the securities were not "exempt securities" under section 3 of the Act, ch 121½, § 137.3, Ill Rev Stats; the sale was not reported to the Secretary of State as required by paragraph G of section 4 of the Act, ch 121½, § 137.4, Ill Rev Stats; and the shares were not registered by the Secretary of State under ch 121½, section 5, Ill Rev Stats. However, had the corporation or Kuntz reported the sale to the Secretary of State within thirty days after the sale and paid the two dollar filing fee in accordance with paragraph G of section 4, the transaction would have been valid and plaintiffs would have had no cause to complain.

Plaintiffs charged that defendant bank was liable as an underwriter as defined by section 2 of the Securities Act. The trial court held in favor of plaintiffs against the corporation and Kuntz, but found the bank not to be an underwriter. This appeal tests the trial court's finding in favor of the bank.

The statutory definition of "underwriter" as it was worded at the time of the transaction in 1959 was:

"The word 'underwriter' shall mean any person who has purchased a security from an issuer or a controlling person with a view to, or sells a security for an issuer or a controlling person in connection with, the distribution thereof, or participates or has a participation in the direct or indirect underwriting of such distribution; but such term shall not include a person whose interest is limited to a commission or discount from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission or discount. An underwriter shall be deemed to be no longer an underwriter of a security after he has completely disposed of his allot-

161

ment of such security or, if he did not purchase the security after he had ceased to sell such security for the issuer or controlling person."

Chapter 121½, § 137.2F, Ill Rev Stats (1957).

A similar provision amended in form only may now be found in Chapter 121½, § 137.2–6, Ill Rev Stats (1965).

■ Although the statutory definition both before and after the amendment suffers from lack of clarity, we may determine that, with certain exceptions set forth in the latter part of the section, an underwriter is one who either (1) purchases a security from an issuer or controlling person with a view to selling it for the issuer or controlling person, (2) sells a security for an issuer or controlling person, or (3) participates, or has a participation in the direct or indirect underwriting of a distribution.

Defendant Kuntz was a "controlling person" under the statute; however, the bank neither purchased the securities nor did it sell them, so neither of the first two meanings apply here. The third meaning, that of participation, is more difficult to analyze in light of the facts of this case. The use of the words "participates" and "underwriting" and the unfortunate grammatical usage found in the statute do not greatly aid us in this task.

Nor do we find any help in the cases cited in the briefs submitted by counsel. Both parties agree that there are no decisions by Illinois courts of review interpreting this statutory definition and the federal cases and other decisions mentioned are not sufficiently similar in factual background to assist in this determination.

It is true that the definition of "underwriter" in the Illinois Securities Law is similar to the definition found in the Federal Securities Act of 1933. 15 USCA 77b(11) (1963).

The Securities Act of 1933 states:

"The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers

or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term 'issuer' shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer. 'Securities Act of 1933,' 15 USCA 77b(11) (1963).''

Counsel have referred us to Securities & Exchange Commission v. Chinese Consol. Benevolent Ass'n, Inc., 120 F2d 738 (1941); Securities & Exchange Commission v. Guild Films Co., 279 F2d 485 (1960); and also to a New York decision, Hyman v. Gregory & Sons, 44 Misc2d 102, 252 NYS2d 919.

In the Chinese case the Second Circuit Court of Appeals, in an opinion by Judge Augustus N. Hand, held that where a benevolent association, composed of Chinese, solicited offers to buy bonds of the Republic of China and received funds therefor which it transmitted to China through the Bank of China, the association was acting as an "underwriter" under the Federal Securities Act. Since the securities were not registered an injunction was ordered to issue.

The court found that the benevolent association solicited the orders, obtained the cash from the purchasers and caused funds to be forwarded so as to procure the bonds. The court held that a contractual relationship between the benevolent association and the Chinese Government was not necessary and that the words "sells for an issuer in connection with the distribution of any

security" should be read as covering continual solicitations regardless of any contractual relationship between the issuer and the party securing the offers.

In the Guild case there was a long and complicated financial transaction involving two banks, two individuals and the securities of five different corporations. Under somewhat questionable circumstances the banks became pledgees of certain corporate shares of Guild Films, Inc. The certificates bore the following restriction as shown on page 487:

> "The shares represented by this certificate have not been registered under the Securities Act of 1933. The shares have been acquired for investment and may not be sold, transferred, pledged or hypothecated in the absence of an effective registration statement for the shares under the Securities Act of 1933 or an opinion of counsel to the company that registration is not required under said Act."

Notwithstanding the lack of registration and the written restriction, the banks took these certificates as pledges and after default the banks attempted to sell the unregistered securities and did in fact sell a portion of them. An injunction proceeding was filed by the Securities and Exchange Commission. The opinion finds that the bank "purchased" the securities within the meaning of the Federal Securities Act and was therefore an underwriter.

The opinion reasons that the term "purchase" although not defined in the Act should be interpreted in a manner complementary of "sale" which is defined at page 489 as including:

> "Every . . . disposition of . . . a security or interest in a security, for value. . . ."

The court points out that Congress had refused to accept a proposed provision of the Securities Act which

expressly exempted sales by or for the account of a pledge holder or mortgagee selling or offering for sale or delivery in the ordinary course of business and not for the purpose of avoiding the provisions of the Act, to liquidate a bona fide debt, a security pledged in good faith as collateral for such debt.

The court also held that privity with Guild Films was not required.

We feel that the Chinese Benevolent Association case is in no way similar with the case at hand and we cannot equate the actions of the Benevolent Association in that case with the actions of the defendant bank in the present case.

With respect to the Guild case we note that the Illinois Securities Law contains a provision specifically excluding:

> "the sale of securities by an executor, administrator, guardian, conservator, receiver or trustee in insolvency or bankruptcy, or at any judicial sale, or at a public sale by auction held at an advertised time and place, or the sale of securities in good faith and not for the purpose of avoiding the provisions of this Act by a pledgee of securities pledged for a bona fide debt."

Chapter 121½, § 137.4E, Ill Rev Stats.

This provision so distinguishes the Illinois Securities Law from the Federal Securities Act as to render inapplicable the rationale of the Guild decision.

The Hyman decision is likewise of little help to us since the factual situation there involved the bank acting as a subscriber for a new issue of shares at the request of the plaintiff. The court held that the bank was not an underwriter and in no way solicited the transaction but did so only as an accommodation to its depositors.

■■ We feel this case must be decided upon an analysis of the actions of the defendant bank to determine whether it participated in the distribution of the se-

165

curities to the plaintiffs. The bank was informed as to the financial situation of the corporation at the time of the transaction; it was informed as to the intended use of the borrowed funds; however, the bank did not look to a profit from the transaction other than by its ordinary charge of commissions and interest for loaning money. The bank checked the credit applications of each of the plaintiffs and, in addition to the pledging of the securities, the bank took the guarantee of both the corporation and Kuntz. It also obtained credit life insurance. After default by the plaintiffs on the notes the bank has taken no action to sell or otherwise dispose of the shares. We do not believe that these actions constitute a participation in the selling so as to render the bank an underwriter under the Illinois Law.

Our decision is supported by a recent decision of the Tenth Circuit Court of Appeals interpreting the definition of "underwriter" under the Federal Securities Act. In Can-Am Petroleum Co. v. Beck, 331 F2d 371 (1964), the court held a party who had invested over $27,000 in an undivided $1\frac{1}{32}$ interest in an oil and gas lease, who had encouraged others to purchase interests in the lease and who was rewarded for her services with another $\frac{1}{16}$ interest not to be an "underwriter" under the federal law. The opinion states at page 374:

> "Her isolated endeavor to join with Can-Am in disposing of their entire interests did not change her relationship from that of investor to underwriter."

The judgment of the circuit court is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.