NOTICE

Decision filed 01/30/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 190506-U

NO. 5-19-0506

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| SOUTH CENTRAL FS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Effingham County. |
| | ) | |
| v. | ) | No. 18-L-56 |
| | ) | |
| NICHOLAS A. TENSEN and KATHLEEN N. | ) | |
| TENSEN, d/b/a Tensen Dairies, LLC, | ) | Honorable |
| | ) | Jeffrey A. DeLong, |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: The court properly determined that the defendants were individually liable for debt that was initially incurred by a limited liability company where they signed a promissory note in their individual capacities, the note secured a preexisting debt of the limited liability company, the limited liability company received consideration, and credit was extended under the note on the strength of their individual signatures. The fact that the plaintiff incorrectly named the defendants individually "doing business as" the limited liability company in the caption of its complaint did not mislead the court or influence its decision.

¶ 2    This appeal involves a judgment on a line of credit note and commercial security agreement. The agreement provided terms for the repayment of the preexisting debt of Tensen Dairies, LLC, a limited liability company owned by the defendants, Nicholas and Kathleen Tensen. Both defendants signed the agreement as individuals, and Nicholas also signed as a representative of the company. Tensen Dairies was dissolved before the debt was satisfied, and the plaintiff,

1

South Central FS, Inc., filed the instant lawsuit to collect the remaining debt. The defendants appeal the trial court's judgment in favor of the plaintiff, arguing that (1) the court erred in rejecting the defendants' affirmative defense of failure of consideration because as individuals, they received no consideration in exchange for their agreement to repay the loan to the limited liability company; and (2) the court erred in "allowing the plaintiff to re-form and re-cast Tensen Dairies, LLC, as Nicholas A. Tensen and Kathleen N. Tensen d/b/a Tensen Dairies, LLC." We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Tensen Dairies, LLC, was organized as a limited liability company in 2010, and it began purchasing feed for its dairy cows from the plaintiff in approximately 2012. On May 6, 2015, the parties entered the agreement at issue in this case. A section of the agreement titled "Debtor" lists three debtors—Nicholas Tensen as an individual, Kathleen Tensen as an individual, and Tensen Dairies, LLC. As noted earlier, both defendants signed the document as individuals, and Nicholas also signed the agreement as an authorized officer of the limited liability company. The agreement provided that, "[f]or value received," the debtors were to pay the sum of $170,000 plus 8% interest to the plaintiff through a $7500 per month milk assignment. It stated that all debtors were joint and severally liable. The agreement further provided that the plaintiff was entitled to recover costs reasonably incurred in attempting to collect the debt. The agreement did not specify a due date.

¶ 5      In 2017, Tensen Dairies, LLC, was dissolved. According to an account statement admitted into evidence, the remaining debt at that time was approximately $112,000. We note that the record in this case is silent as to whether the defendants or other managers followed the statutory procedures prescribed for discharging the debts of a limited liability company during the winding-down process. See 805 ILCS 180/25-45, 35-4, 35-10 (West 2016).

¶ 6    In July 2018, an attorney representing the plaintiff sent the defendants a letter concerning the debt. In December 2018, the plaintiff filed the instant lawsuit, requesting judgment for the remaining debt along with attorney fees incurred attempting to collect the debt.

¶ 7    The defendants appeared *pro se* throughout the proceedings. In their initial response to the plaintiff's complaint, they asserted that the plaintiff erred in naming them individually as defendants. They alleged that Tensen Dairies had always been a limited liability company. Attached as an exhibit was a copy of the "Illinois Limited Liability Company Act Articles of Organization" establishing Tensen Dairies, LLC, dated January 25, 2010. In an amended answer and affirmative defenses, the defendants denied that they, as individuals, owed any debt to the plaintiff. They asserted failure of consideration as an affirmative defense, alleging that Tensen Dairies was registered as a limited liability company prior to the date on which the parties entered into the agreement and arguing that the plaintiff's attempt "to attach the debt to [the defendants] as individuals fails for lack of consideration." The defendants further argued that the "[p]laintiff's insistence on naming [them] individually, *DBA Tensen Dairies LLC*[,] appears to be a disingenuous attempt to re-form or re-cast the original *Tensen Dairies LLC* debt accrued May 27, 2014[,] through May 6, 2015[,] as being incurred by us as a joint proprietorship *dba Tensen Dairies LLC*." (Italics in original.) The defendants raised additional arguments concerning inadequate clarity in the contract terms and a lack of a meeting of the minds. However, they do not continue to press these additional arguments on appeal.

¶ 8    The matter proceeded to trial in October 2019. Much of the testimony related to the exhibits admitted into evidence. The plaintiff offered into evidence four exhibits—a copy of the line of credit note and security agreement; an account statement dated April 30, 2018, showing a balance on that date of $115,116, including interest; a transaction history of the Tensen Dairies account

showing that the last payment on the loan was made in April 2017; and a statement itemizing the attorney fees incurred by the plaintiff in its effort to collect the debt.

¶ 9 The defendants offered five exhibits. Among the exhibits were two letters from the plaintiff's attorney, Holly Hotze Lynch. One letter pertained to the debt at issue in this case, while the other pertained to an outstanding debt owed by Tensen Dairies, LLC, to another company, Altamont Overhead Door, LLC (Altamont). Both letters were dated July 2, 2018, and addressed to Tensen Dairies, LLC; neither was addressed to Nicholas and Kathleen, individually, "d/b/a Tensen Dairies." The defendants also offered into evidence copies of the summons in this case, which named the defendants as "Nicholas A. Tensen and Kathleen N. Tensen, d/b/a Tensen Dairies, LLC," and the summons in a case involving the debt to Altamont, which named the defendant as "Tensen Dairies, LLC." The defendants' final exhibit was an account statement dated March 31, 2017, which stated, "Zero Balance—No payment due." Under the heading, "Summary of Programs," the document indicated that a "future amount due" of $112,072.50 was due under the "Secured Repayment Program."

¶ 10 The plaintiff's first witness was its feed marketing manager, Phillip Westendorf. He knew the defendants because he was the supervisor of the nutritionist who recommended feed for them to purchase for their cows. On direct examination, Westendorf testified about Plaintiff's Exhibit A, the line of credit note and security agreement. He explained that the line of credit of $170,000 was for feed that had already been purchased. He testified that the defendants were offered an 8% interest rate on the line of credit instead of the plaintiff's usual rate of 24% to help them pay off the entire balance. When asked to explain the provision calling for a $7500-per-month milk assignment, Westendorf testified that this amount was deducted from the monthly payments the defendants received for selling milk to the Dairy Farmers of America. He explained that the money

4

was withheld automatically, and the defendants did not have to write monthly checks. Asked if he knew whether the payments were made, Westendorf replied, "Yes. I believe there was. Early on, there was $7500 a month payments."

¶ 11 On cross-examination, Westendorf acknowledged that the agreement did not have a stated maturity date. He testified, however, that his "assumption would be the $7500 a month until the $170,000 was paid at 8%." When asked who received the feed, Westendorf indicated that the feed was sold to Tensen Dairies. When asked who received the funding under the loan agreement, he replied, "Tensen Dairies and the individuals of Nick and Kathy." The following exchange occurred between Westendorf and Nicholas:

"Q. And is there anywhere, there is a statement of account, is there anywhere where we are listed as Tensen Dairies doing business as Nicholas and Kathleen?

A. Not that I'm aware of."

¶ 12 Next, the plaintiff called Jennera Lynn Clark, one of its credit managers, who was familiar with the defendants' account. On direct examination, she identified three of the plaintiff's exhibits. On cross-examination, Clark was asked whose name appeared on the account statement. She replied, "Tensen Dairies, LLC, in care of Kathy Tensen." Asked about the July 2018 letter from the plaintiff's attorney concerning the debt, Clark testified that the letter was addressed to "Tensen Dairies, LLC, in care of Kathy Tensen," and listed the debtor as "Tensen Dairies." In response to further questioning, Clark confirmed that the summons in this case was addressed to "Nicholas A. Tensen and Kathleen N. Tensen doing business as Tensen Dairies, LLC." The following exchange then occurred between Nicholas and Clark:

"Q. We were kind of curious what happened between July 2 and the date of the summons that all of a sudden we are doing business as instead of the LLC?

5

A. I didn't put this together. I can't answer that question.

Q. Do you know who would be able to answer that question?

A. I would assume our attorney."

¶ 13 Finally, Nicholas called Clark's attention to the March 2017 account statement. Specifically, he asked what it said under "Amount due." Clark responded, "No payment due. Do not pay."

¶ 14 On redirect examination, Clark explained that the March 2017 account statement showed no amount due because the amount owed on the account was put into a program called the DL-45 program, the purpose of which was "to allow more time to get this balance collected." She testified that the total balance in March 2017 was $112,072.50. She further testified that the debt had not been forgiven.

¶ 15 The defendants did not call any witnesses or present any evidence other than the five exhibits we discussed earlier. During closing argument, Nicholas argued that (1) he and Kathleen received no consideration; and (2) the line of credit note and security agreement did not have a maturity date. Kathleen stated, "We just want to say that this has always been Tensen Dairies, LLC, never a DBA, and the goods were received by the farm." She reiterated her husband's argument that they did not receive any consideration as individuals. She went on to state: "And as far as the signatures on the document, we were asked to sign individually for a milk assignment because Dairy Farmers of America require something in writing with a member's name on it in order to initiate the payment to come out of our milk check."

¶ 16 The court announced its judgment for the plaintiff from the bench. In pertinent part, the court explained its ruling as follows:

6

"Now I understand this wasn't always your debt. The problem you ran into is when you signed this Plaintiff's Exhibit A where you signed to take this on as individuals.

The testimony of the first witness was that the, that this was a benefit to you when it went from 24 to 8 percent interest, which would be a consideration, and they did this as a milk assignment. So I do find judgment for them."

The court also found the attorney fees incurred by the plaintiff to be reasonable and entered judgment for the plaintiff in a docket entry that day. This timely appeal followed.

¶ 17                                     II. ANALYSIS

¶ 18    The defendants frame the issues before us as: (1) whether the court erred in finding that they, as individuals, received consideration in exchange for their promise to repay the debt of Tensen Dairies, LLC; and (2) whether the court erred in "allowing the plaintiff to re-form and re-cast Tensen Dairies, LLC, as Nicholas A. Tensen and Kathleen N. Tensen d/b/a Tensen Dairies, LLC." Although we will address both arguments, we believe the question before us is whether the court correctly determined that the defendants were liable as signatories of the agreement in their individual capacity. For the following reasons, we answer that question in the affirmative.

¶ 19    We first briefly address the defendants' argument that the court erred in "allowing the plaintiff to re-form and re-cast Tensen Dairies, LLC, as Nicholas A. Tensen and Kathleen N. Tensen d/b/a Tensen Dairies, LLC." As the defendants correctly point out, the evidence is undisputed that Tensen Dairies was a limited liability company at all relevant times. Significantly, however, the court recognized as much in its ruling. As we discussed earlier, the trial judge explicitly told the defendants that he understood the debt was not always their debt. He explained that it became their debt when they signed the agreement to "take [the debt] on as individuals." Thus, the record reflects that the court was not misled by the caption in the plaintiff's complaint.

7

Rather, the court found the defendants liable in their individual capacities for other reasons. We therefore reject the defendants' contention that the court erroneously "re-cast" the limited liability company as two individuals doing business as Tensen Dairies.

¶ 20    We turn our attention to the defendants' arguments concerning consideration. As discussed earlier, the court found that the reduction in the interest rate on the existing debt from 24% to 8% constituted consideration. The defendants acknowledge that this constituted consideration received by the business entity, Tensen Dairies, LLC. They argue, however, that they as individuals did not receive this consideration. Although we agree, we nevertheless find that the court correctly held that they were responsible for the debt as signatories of the note. See *Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 25 (noting that an appellate court may affirm the judgment of the trial court on any basis appearing in the record, regardless of whether the court relied on that basis, and regardless of whether the court's reasoning was correct).

¶ 21    Consideration is any benefit to the promisor or detriment to the promisee. *Boatmen's Bank of Benton v. Durham*, 203 Ill. App. 3d 921, 925 (1990). It is a necessary component of an enforceable contract. See *In re Estate of Khan*, 2021 IL App (1st) 200278, ¶ 24. Thus, where consideration is lacking, a defendant may plead want of consideration as an affirmative defense in an action on a note, bill, or other instrument. 815 ILCS 105/9 (West 2018).

¶ 22    In an action on a validly executed negotiable instrument, such as the note and agreement at issue here, there is a presumption of consideration. *Boatmen's Bank*, 203 Ill. App. 3d at 925; *Stolzenbach v. Pagoria*, 71 Ill. App. 3d 863, 866 (1979). To overcome the presumption, a defendant must do more than simply plead lack of consideration; rather, the defendant must present evidence showing there was no consideration. *Stolzenbach*, 71 Ill. App. 3d at 866.

¶ 23　　In this case, there is no question that the business entity, Tensen Dairies, LLC, received consideration from the plaintiff. The defendants acknowledge in their appellate brief that the company received a benefit in the form of a reduced interest rate. In addition, there is no dispute that the agreement involved the repayment of a preexisting debt incurred by the limited liability company in exchange for the feed it purchased from the plaintiff. See *Boatmen's Bank*, 203 Ill. App. 3d at 926 (explaining that the execution of a note to secure an existing debt does not require additional consideration).

¶ 24　　The defendants' argument, however, is not that no consideration existed at all, but rather, that they, as individuals, received no consideration. With certain exceptions that are not applicable here, the members and managers of a limited liability company are not personally liable for the debts and obligations of the company solely by virtue of their positions as members and managers. 805 ILCS 180/10-10(a) (West 2020). However, such members and managers *may* be liable as individuals under contract or other law. See *id.* § 10-10(a-5).

¶ 25　　Here, the defendants signed the note in their individual capacity. While consideration is a requirement, it is not necessary to establish that the makers or signatories of a note received consideration themselves. Rather, it is sufficient to show that "consideration was extended on the strength of the maker's signature, in consideration of the maker's promise to repay." *Boatmen's Bank*, 203 Ill. App. 3d at 925. As the defendants acknowledged during their closing argument to the trial court, and they again acknowledge in their argument to this court, they were required to sign the note as individuals to arrange the necessary milk assignment. Thus, the plaintiff extended consideration to the limited liability company on the strength of their signatures as individuals. We therefore conclude that the note was enforceable against the defendants in their individual capacity as signatories of the note.

9

¶ 26                                    III. CONCLUSION

¶ 27    For the foregoing reasons, we affirm the judgment of the trial court.


¶ 28    Affirmed.