**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230272-U

Order filed August 19, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| ROBERT STUKEL and SCOTT STUKEL, | ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, |
| Plaintiffs-Appellees, | ) ) | Will County, Illinois, |
| v. | ) ) | Appeal No. 3-23-0272 |
| | ) ) | Circuit No. 16-L-78 |
| SCOTT ROWE, NANCY ROWE, ANTHONY CHAPAS, MICHAEL MOYER, NIHAD SABANOVIC, MATTHEW WELDON, MATT PETERSON, individually, AC1 INVESTMENTS, INC., SIMPLE INVESTMENT SYSTEMS, LLC, CHICAGO BUSINESS DEVELOPMENT GROUP, INC., BLACKSTONE HOLDINGS, LLC, NODLEW, LLC, M3 INVESTMENTS, LLC, RENATUS, LLC and RENATUS EDUCATION, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Brian E. Barrett, Judge, Presiding. |
| Defendants | ) ) | |
| (Scott Rowe, | ) ) | |
| Defendant-Appellant). | ) | |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Brennan and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*:   The promissory note obtained by the plaintiff is not a security as defined by the Illinois Securities Law when the terms of the note do not provide for the lender to receive profits or interest in the business of the borrower and the relationship between the parties presents that of a passive lender and borrower.

¶ 2   Defendant, Scott Rowe, appeals the judgment entered against him finding that he violated the Illinois Securities Law. Rowe argues that the circuit court erred in finding that the promissory note between plaintiff, Robert Stukel, and AC1 Investments, Inc. (AC1) constituted a security to which the Securities Law would apply. For the foregoing reasons, we reverse.

¶ 3                                      I. BACKGROUND

¶ 4   Stukel met Rowe through his son, Scott Stukel, sometime in 2011. Scott had become an affiliate for Renatus Education, LLC, a company for which Rowe was also an independent marketing affiliate. Rowe also owned a company that rented office space in Downers Grove, Illinois. That company sublet some of its office space to AC1.

¶ 5   Scott introduced Stukel to the owners of AC1, Anthony Chapas and Michael Moyer, whom he met through Rowe during marketing events at the office space. Rowe had no ownership in AC1. After meeting Chapas and Moyer, Stukel then executed a promissory note with AC1 on January 3, 2012, for $52,000. AC1 intended to use the loan for a real estate development project. Per the terms of the promissory note, AC1 was to repay Stukel the loan with 8% interest. Repayment would occur when AC1 finished its project, which was to rehabilitate a property in Calumet City, Illinois. The promissory note also included a provision that a mortgage would be recorded on the property for Stukel's benefit. That mortgage was never recorded. Later, AC1 tendered a check to Stukel to repay the loan but the check bounced. AC1 never tendered a replacement check.

2

¶ 6 Instead of a replacement check, another promissory note was executed. This note referenced a Chicago property on St. Lawrence Avenue. The note rolled over Stukel's initial loan amount and included an additional $63,000, making the total loaned to AC1 $115,000 with an interest rate of 12%. The note also included a provision that AC1 would record a mortgage, which was again never accomplished. The note provided that Stukel would receive repayment of the loan upon project completion.

¶ 7 After execution of the promissory note, AC1 made two interest payments to Stukel. No payments on the principal loan were ever made. In 2013, Stukel recorded a lien on the property which stated that Stukel loaned money to Michael Moyer of AC1 and had not been repaid. He recorded another lien in 2014 when he still had not received repayment. Neither lien referenced Rowe or his alleged involvement in the execution of the promissory note.

¶ 8 On January 29, 2016, Stukel filed a complaint against Rowe and several other defendants. Of relevance to this appeal, the counts against Rowe alleged that Rowe was acting as a salesperson of a security in connection with the promissory note between Stukel and AC1. Stukel sought $50,000 plus attorney fees under the theory that Rowe committed securities fraud in violation of the Illinois Securities Law.

¶ 9 Rowe filed several pretrial motions, including a motion to dismiss that argued the promissory note could not be classified as a security under the Securities Law. In its order denying the motion, the court stated that there were sufficient facts pleaded for a jury to determine whether the promissory note was an investment or a loan, which would determine whether the note was a security. Rowe later filed a motion for summary judgment, again arguing that the promissory note was not a security. The court also denied this motion.

¶ 10      A jury trial began on January 30, 2023, on the counts against Rowe and Renatus. The counts against Rowe alleged a violation of the Securities Law and common law fraud. Prior to trial, Stukel entered into a settlement agreement with AC1 whereby AC1 was to pay Stukel $2,000. The settlement agreement included a provision that Stukel agreed to waive and release all claims against agents and affiliates of AC1.

¶ 11      At trial, Stukel testified that during a meeting he attended with Rowe and AC1, Rowe represented to him that he was involved with AC1 and participated in helping it secure the loan for the St. Lawrence project. Stukel's son Scott had become involved in Renatus, a company Rowe described in a promotional video as a real estate investing college. Stukel testified that he first met the parties involved through Scott. After meeting Moyer and Chapas, Stukel agreed to loan AC1 the money for the first project. Stukel met with Rowe after the initial loan, and Rowe said that even though the first project failed, Stukel had the option of being repaid right away or to roll over the loan into a new loan for which the additional funds given would be used to fund the St. Lawrence rehabilitation project. Rowe told Stukel that Scott would receive five percent of the deal if he rolled over his initial investment into the second loan. Stukel further testified that Rowe said "[h]e was going to have Scott work with Moyer and Chapas and he'd be paying the bills and stuff." Stukel stated that he believed he was making a loan, not making an investment in AC1. He was not receiving any shares or interest in AC1 as a result of the loan. He compared the loan to one a bank would have given. He expected to be repaid regardless of the success or failure of the St. Lawrence project.

¶ 12      Stukel presented Rowe's promotional video to the jury. This video showed Rowe promoting the investment and explaining his role in it. In the video Rowe explained he was a real estate investor who assisted in obtaining financing from private funders. He named Scott in the

4

video, stating that he was an intern at Renatus and would be receiving five percent of a $60,000 investment he brought in for a project the company was offering assistance for. Rowe stated that Scott's deal involved "a promissory note attached to our company with a recorded mortgage."

¶ 13　　　Rowe testified that neither he nor his company ever owned the property at issue. He also testified that he never saw the promissory note until after Stukel filed suit against him. He was not a party to the note and denied that he acted as a salesperson on AC1's behalf. He denied any involvement in facilitating the execution of the loan between Stukel and AC1.

¶ 14　　　At the close of Stukel's case, Rowe filed a motion for a directed verdict, which made arguments similar to his motions to dismiss and summary judgment. Mainly, Rowe argued that the promissory note was not a security under the law, thus the claim against him under the Securities Law must fail. The court denied Rowe's motion.

¶ 15　　　The jury found in Stukel's favor on the Securities Law claim and awarded him $87,000 in damages. Rowe filed a posttrial motion for judgment notwithstanding the verdict, arguing that the promissory note was not a security under the law and that Stukel failed to comply with requirements of the statute, such as proper notice and written demand for rescission within six months of Stukel's knowledge that the sale was voidable. The court denied Rowe's motion and further awarded $102,704.35 to Stukel for attorney fees and costs. During the hearing for attorney fees, Rowe objected to several charges, arguing that the attorney bill included charges for services related to other defendants and other counts in the complaint not related to him and the Securities Law claim against him.

¶ 16　　　Rowe now appeals.

¶ 17　　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 18        Rowe brings this appeal after the denial of his posttrial motion. He argues that the court erred in denying his motion for directed verdict and posttrial motion because the loan agreement between Stukel and AC1 does not constitute a security under the Securities Law. He further argues that Stukel did not fulfill his obligations under the Securities Law, including providing notice for his demand for recission and properly tendering the note. Rowe also challenges the court's award for attorney fees, arguing that the court erred in awarding fees for services performed on other claims regarding other defendants and that the fees related to his claims should have been separated from the rest of the claims.

¶ 19                                          A. Waiver

¶ 20        Stukel first argues that the issues raised by Rowe on appeal are waived because they were not properly presented to the jury at trial as no jury instructions were given to address Rowe's position. See *McQueen v. Green*, 2022 IL 126666, ¶ 55 ("a 'party forfeits the right to challenge a jury instruction that was given at trial unless it makes a timely and specific objection to the instruction and tenders an alternative, remedial instruction to the trial court.' " (quoting *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 557 (1989))). He contends that because Rowe failed to request jury instructions regarding whether the promissory note was a security and whether Stukel complied with all the provisions of the Securities Law, he cannot now challenge the findings the jury made regarding those points.

¶ 21        However, the issues raised now on appeal concern whether the promissory note between Stukel and AC1 constituted a security and if Stukel followed the requirements of the Securities Law. These are questions of law, not questions of fact that the jury would decide. See, *e.g.*, *Van Dyke v. White*, 2019 IL 121452, ¶ 45 ("The determination of whether a financial instrument falls within the definition of a 'security' under the Act is a matter of statutory construction, which

6

presents a question of law subject to *de novo* review."). Rowe does not challenge the jury instructions given but the legal decisions made by the court that led to the matter coming before the jury in the first place. Thus, there would be no basis for Rowe to present the question to the jury, as the jury is the factfinder and the court must address all questions of law. See *People v. Cunitz*, 45 Ill. App. 3d 165, 171 (1977) ("By the common law jurors in both criminal and civil cases are to determine only questions of fact; it is for the court alone to determine questions of law."). Because the issue of whether the promissory note was a security is a legal question and not a factual one, the question should not have been submitted to the jury, as Stukel asserts. See, *e.g.*, *Fox v. Seiden*, 2019 IL App (1st) 180598-U, ¶ 40 (finding that a question of law should not be submitted to the jury as it is a question for the court to determine). Thus, Stukel's argument regarding waiver here is misplaced.

¶ 22     Stukel also argues that these issues are waived because they were raised in motions to dismiss and for summary judgment, thus the continued litigation waived them on appeal. Generally, when a case proceeds to trial after a motion for summary judgment is denied, the order denying the motion for summary judgment merges with the judgment and is not appealable. *Labate v. Data Forms, Inc.*, 288 Ill. App. 3d 738, 740 (1997). However, an exception exists where the issue raised in the summary judgment motion presents a question of law that would not be decided by the jury. *Id.* If this occurs, the denial of a summary judgment motion does not merge with the judgment and may be addressed on appeal. *Id.* Here, Rowe's motion for summary judgment raised issues that were questions of law that would not be decided by the jury. See *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶¶ 42-43. By continuing to raise the issues in his posttrial motion, Rowe preserved his argument for appeal. See *Nilsson v. NBD Bank of Illinois*, 313 Ill. App. 3d 751, 767 (1999) (when the trial court

denies a defendant's motion for summary judgment and the defendant is later found liable in a jury trial, the defendant forfeits the issues raised in his summary judgment motion for purposes of appeal if the defendant does not file a posttrial motion).

¶ 23        Regarding Stukel's argument that Rowe waived his arguments raised in his pretrial motion to dismiss, a defendant generally waives those arguments made in a motion to dismiss that attacks defects in the pleadings when he answers the complaint. *In re Estate of Yanni*, 2015 IL App (2d) 150108, ¶ 20. Here, Rowe does not argue a defect in the pleading; rather, he raises a legal argument regarding whether a promissory note is a security. When denying Rowe's motion to dismiss, the court decided that sufficient allegations were pleaded to allow a jury to determine whether a security was procured under the note. While the court determined that the complaint was sufficiently pleaded, Rowe now makes a different argument—that after discovery and trial, Stukel was unable to establish that the promissory note was a security. This is different than arguing a defect in the pleadings. Accordingly, we find that these issues have not been waived and we may review them on appeal.

¶ 24                                      B. Security

¶ 25        Rowe's primary argument on appeal is that the circuit court erred in denying his posttrial motion because the promissory note executed between Stukel and AC1 was not a security as defined by the Illinois Securities Law. 815 ILCS 5/2.1 (West 2012). Specifically, Rowe contends that Stukel's agreement with AC1 simply amounted to a loan and not a security, in part because the note did not promise Stukel any profits or any interest or ownership in AC1. Rowe further contends that because the promissory note does not amount to a security, he cannot be found liable under the theory he violated the Securities Law. *Id.*

8

¶ 26    Stukel argues that sufficient evidence was presented to demonstrate that the promissory note was indeed a security under the Securities Law, including the fact that payment was contingent upon completion of the project. *Id.* Because project completion occurred when the property was rehabilitated, refinanced, or sold, repayment was dependent on the work of others to finish the project. These factors, Stukel argues, indicate that the note was a security and the Securities Law applies. *Id.*

¶ 27    The question we must address is whether the transaction involving Stukel and AC1 is a securities transaction within the meaning of the statute. The determination of whether a financial instrument falls within the definition of a "security" under the Securities Law is a matter of statutory construction, which presents a question of law subject to *de novo* review. *People ex rel. Madigan v. Wildermuth*, 2017 IL 120763, ¶ 11.

¶ 28    The Illinois Securities Law defines "security" as:

> " 'Security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, *** or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing." 815 ILCS 5/2.1 (West 2012).

¶ 29    To put it simply, "a security within the meaning of the securities laws is a contract, transaction or scheme whereby one person invests his money in a common enterprise on the theory that he expects to receive profits solely from the efforts of others." *Boatmen's Bank of Benton v. Durham*, 203 Ill. App. 3d 921, 927 (1990); *Van Dyke v. White*, 2019 IL 121452, ¶ 51; *Daleiden v. Wiggins Oil Co.*, 118 Ill. 2d 528, 538 (1987); *Dvorkin v. Soderquist*, 2022 IL App

9

(1st) 201368, ¶¶ 79-80. A common enterprise is one in which the investor's profits are dependent upon the success of those seeking the investment or another third party. *Integrated Research Services, Inc. v. Illinois Secretary of State Securities Dept.*, 328 Ill. App. 3d 67, 72 (2002).

¶ 30       Stukel's argument is that he was not due to be paid until project completion, which required him to rely on the efforts of others to complete the project. This, he argues, indicates he was part of a common enterprise, and the loan meets the statutory definition of a security. 815 ILCS 5/2.1 (West 2012). However, this is not the sole factor we must consider in our analysis. We must also consider whether the note was an investment and whether that investment entitled Stukel to retain profits from the project. See *Integrated Research Services, Inc.*, 328 Ill. App. 3d at 72. Moreover, in determining whether an instrument or a transaction is a security under the statute, we consider substance over form. *Boatmen's Bank*, 203 Ill. App. 3d at 926-28. The substance of the transaction and the relationship between the parties determine whether a transaction involves a security. *Saunders, Lewis & Ray v. Evans*, 158 Ill. App. 3d 994, 996 (1987); *Polikoff v. Levy*, 55 Ill. App. 2d 229, 234 (1965). Thus, in addition to the note's language that Stukel would not be repaid until project completion and his reliance on third parties, we must also examine Stukel's relationship with the other parties and his expectations in lending AC1 the funds for the project, as well as whether the loan equated to an investment requiring him to receive part of the profits from AC1.

¶ 31       Here, Scott himself did not invest in the project. Robert Stukel signed a promissory note, made payable to AC1, in exchange for Stukel loaning AC1 the funds to complete its project. In substance, Stukel acted as a lender, which Stukel admitted to in his testimony. He did not have a personal stake in the investment and did not look to profit from the transaction other than by receiving repayment of the loan amount and collecting interest therefrom. The success or failure

10

of AC1's projects was not a factor in whether Stukel would be repaid, as "project completion" may be reached when it is determined the project can no longer continue and must be abandoned. Indeed, Stukel testified at trial that he believed he was merely providing a loan and expected repayment of that loan even if the project failed. Stukel also testified that after the failure of the first project he had the option to either be repaid then or to roll over the loan into a second loan, indicating that the first promissory note also could not be classified as a security because repayment was not contingent on a successful project.

¶ 32    Based on the evidence presented at trial, it is clear that Stukel's involvement in the transactions which took place was that of a passive lender similar to a bank. A promissory note under which the purchaser was a "passive lender" who "did not look to profit from the transaction other than by its ordinary *** charges for lending money" is generally not a security under the Securities Law. *Boatmen's Bank*, 203 Ill. App. 3d at 927-28. Stukel operated as a passive lender here, where the only expectation he had regarding the loan was to be repaid what he loaned, plus interest. Because there were no interests or expectations other than what a passive loan would entail, the promissory note does not constitute a security. Therefore, Rowe could not have been liable for a Securities Law violation, as no security was involved in this transaction making the Securities Law inapplicable.

¶ 33    Accordingly, we find that the court erred in denying Rowe's posttrial motions, which requires reversal. We must also reverse the circuit court's order granting Stukel attorney fees and costs, as our finding that Stukel cannot prevail on his claim under the Securities Law means he is no longer entitled to this assessment. See 815 ILCS 5/13(A) (West 2022) ("*If the purchaser shall prevail *** The Court shall assess costs together with the reasonable fees and expenses of the purchaser's attorney.*" (emphasis added.)). Because we reverse on other grounds, we need not

11

address the additional issues raised by Rowe on appeal. See *Ellig v. Delnor Community Hospital*, 237 Ill. App. 3d 396, 409 (1992).

¶ 34                                    III. CONCLUSION

¶ 35          The judgment of the circuit court of Will County is reversed.

¶ 36          Reversed.